HUDSON *v.* CARMICHAEL *et al.*

No. 10843.   OCTOBER 17, 1935.

*A. F. Jenkins* and *Miles W. Lewis,* for plaintiff.
*C. S. Baldwin Jr.,* for defendants.

BECK, Presiding Justice.   Mrs. Lucile B. Hudson filed an equitable suit against Mrs. Weyman Carmichael and her husband, Weyman Carmichael, praying for injunction and other equitable relief.   In substance she alleged that on the first Tuesday in August, 1933, she purchased at administrator's sale 100 acres of land known as the Evans land; that this tract of land is bounded on the south by the lands of Mrs. Weyman Carmichael; that the defendants, without any legal authority to do so, erected a dam on the land that belongs to Mrs. Carmichael, south of the Evans

place; and that this dam has been built to such a height that it obstructs the free and natural passage of water in a branch located on the Evans place belonging to the plaintiff. She prayed that the defendants be enjoined from obstructing the natural flow of the branch through her land. The defendants in their answer admitted that the land on which the dam is constructed belongs to Mrs. Carmichael, but contended that her husband, in the construction of the dam, was acting as the agent of his wife. Defendants admitted also that the dam was built to such a height (three and a half feet) that it obstructs the free passage of water in the branch which runs through the lands belonging to plaintiff; but defendants alleged that in March, 1933, prior to plaintiff's purchase of the Evans place, in August, Weyman Carmichael, representing his wife, commenced the construction of the dam, and obtained from Anderson Evans, as administrator of Tom Evans, the right to back water up the branch on the Evans place so far as it would go by having water raised at the dam a distance of five feet above the eight-inch iron pipe which defendants had already installed to carry water to their water-wheel; that this permission was given to defendants by the administrator in consideration of defendants giving Evans and his family and the heirs of Tom Evans, the right to fish in the pond so long as it remained there; that after so obtaining this easement defendant took possession of the premises, cleared off the basin of the pond, and proceeded with work on the dam; that about the first of July, 1933, defendant saw in the county newspaper an advertisement of the Evans place for sale at administrator's sale, and learning that the plaintiff intended to buy in the place at that sale, and wishing to have no trouble about the back water with any new owner, defendant Weyman Carmichael, representing his wife, went to see Mrs. Hudson, and, in the presence of her husband, John Hudson, told her that he understood she was going to buy the place, and that defendant was already building a dam which possibly might back some water on the place that she was about to buy, and asked Mrs. Hudson if this would be all right, and she stated that it would be, provided it was being built in a sanitary manner, and that her husband would look at it the next day and tell defendant whether or not it met with her approval; that on the next day the husband came and saw that defendant had cleaned up the basin and burned all trash,

and, after making the suggestion that defendant take the mowing machine and mow down certain weeds that were in the basin and were to be covered by water, Hudson, acting as agent for his wife, said to go ahead and build the dam, and that it would be all right to back that amount of water on the Evans place; and that it was understood and agreed then and there that Mrs. Hudson and her children and her husband would have the right to fish in the pond and hunt on it as long as it remained there, and were to have the benefit of any electricity that might be generated afterwards in the operation of the plant. Defendants further contended that in pursuance of that agreement they expended a large sum of money in building the dam to its present height, and that under the law and the facts of the case the oral agreement is binding on the plaintiff, and she is not entitled to restrain the operation of the dam, which was so constructed and operated as not to damage the lands of the plaintiff in any manner whatever, and in such way as not to cause sickness from mosquitoes or otherwise.

In an amendment to her petition the plaintiff denied there was any such agreement as defendants claimed, but on the contrary she averred that the defendants were put on notice that she would not agree for this dam to be erected to such a height as to obstruct the free passage of water in that part of the branch running through the Evans place, now the property of plaintiff. To the defendants' answer the plaintiff filed a demurrer in part as follows: (1) It sets forth no defense to this action. (2) The contract alleged, by which Mrs. Carmichael claims to have purchased lands of plaintiff covered by water from her dam is void, because: (a) It is for an interest in land, or an easement therein, and is entirely in parol and within the statute of frauds. (b) It fails to show that defendant has ever entered into possession of said land and made any improvements thereon. (c) It fails to show any legal consideration paid therefor or agreed to be paid therefor. Other grounds of demurrer were sustained. The jury rendered a verdict in favor of the defendants. A motion for new trial was overruled, and the plaintiff excepted.

The court did not err in overruling the grounds of the demurrer set out in the foregoing statement. The answer shows an agreement and contract between the plaintiff and the defendant, which if substantiated, would be a sufficient defense to the plain-

tiff's suit and her prayer for injunction; and plaintiff ought not to have recovered if the allegations in the defendant's answer were sustained by proof.

■ Error is assigned on the court's allowing Weyman Carmichael, to testify, on direct examination as follows: "I have now completed that dam. The total cost of it is over $1200 that I have already spent. I have worked it up pretty cheap." The court did not err in admitting this testimony, in view of the alleged parol agreement between the plaintiff and the defendant concerning the erection of the dam. The construction of a substantial dam at the location alleged and the expenditure of money in making it was a question for consideration by the jury, and the evidence was properly admitted. This ruling is applicable to the assignment of error on the court's admission of the evidence set out in the next ground of the motion for a new trial.

■ Error is assigned on the court's allowing in evidence the following testimony of the witness Baldwin: "About this public utilities part of this proposition; that is, building this project or selling electricity to the public—anybody that wants it. I was hired in this case by Mr. Carmichael, and I knew that was an important part of it, and in his behalf and as his attorney I did take it up with the Public-Service Commission. I talked with Mr. Jud P. Wilhoit about it. I am just testifying to show his good faith in wanting to sell electricity to the public. I investigated how many people he would have to serve before he would be called a public utility, and I found you didn't have to serve any certain amount. Just serve anybody, and all you have to do to be a public utility is to sell some electricity generated by power, and that makes you a public utility. That had to conform with the rates published by the Public-Service Commission; and that is all there is to it." This evidence was objected to on the ground, among others, that it was irrelevant. The objection was well taken. The evidence was irrelevant, and could have been a basis for argument by counsel for the defendant that would have been hurtful to the plaintiff's case.

The rulings stated in headnotes 4, 5, and 6 require no elaboration.

*Judgment reversed. All the Justices concur, except Russell, C. J., absent because of illness, and Gilbert, J., who dissents.*